JOHN A. GUNN, Appellant, et al., Appellees, v. GOULD BALANCE VALVE COMPANY et al., Appellees.

APRIL 3, 1928.

REHEARING DENIED JUNE 26, 1928.

*Miller, Kelly, Shuttleworth & McManus,* for appellant.

*O. P. Myers* and *E. C. Ogg,* for W. P. Coutts, R. C. Birchard, Hans Paulsen, Sherman Woods, and Eva Coutts, appellees.

*Korf & Korf,* for Burton & Company State Bank and L. A. Andrew, Receiver, appellees.

DE GRAFF, J.—The appellant, John A. Gunn, as creditor and bondholder of the defendant Gould Balance Valve Company, a corporation, filed his petition January 16, 1925, to foreclose a certain trust deed or mortgage of said corporation, and to have appointed a receiver of said corporation as an insolvent. On February 3, 1925, a receiver was duly appointed, as prayed. The other defendants (appellees herein), except the receiver of the Burton & Company State Bank, trustee, were holders of certain bonds purchased for value by them, respectively, from the Gould Balance Valve Company, and secured by the trust deed heretofore mentioned. These defendants, upon the commencement of the action, were not served with an original notice, but, on the 9th day of February, 1925, a decree was entered foreclosing the mortgage deed and, *inter alia,* granting a judgment in the sum of $6,512.93 in favor of the plaintiff Gunn against the Gould Balance Valve Company for certain indebtedness owed by said company to plaintiff, and including also $1,000 in trust bonds purchased by plaintiff, and establishing said judgment as a lien upon certain other bonds of the par value of $7,500 held by the plaintiff as collateral security.

It was further adjudged and decreed that the decree entered "shall not be binding upon any of the defendants who have not been served with original notice, and who are holding legal and valid bonds secured by the mortgage referred to herein."

Subsequently to the entry of this decree, the defendants not previously served with notice were served, and, responsive thereto, answers were filed, in which the relations of said defendants

174

to the Gould Balance Valve Company, a corporation, are recited, and it is pleaded that the bonds held by them were sold and issued to them as good-faith purchasers, and that the mortgage deed was made and executed to secure solely and only the said bonds, duly issued in the manner as provided in said mortgage and deed of trust, and none other, and that these defendants, as holders of said bonds; should be held as preferred holders and owners of said respective bonds. Prayer was made in conformity thereto that, upon the foreclosure herein, judgment in their favor in the sum of each of the respective bond or bonds should "be held a first lien and preferred lien on all of said property in said mortgage and trust deed."

Upon the issues joined, a hearing was had, and on June 30, 1926, the trial court entered a modified decree, in which the rights of the parties and the judgments theretofore entered were not disturbed, except in one particular. In the modified decree it was adjudged that the plaintiff John A. Gunn "does not hold bonds" in the sum of $7,500 "as collateral to any indebtedness of the said Gould Balance Valve Company, and the said John A. Gunn has no right, interest, or claim in and to said bonds, and is entitled to no judgment thereon." This variance in the two decrees is the crux of this appeal. It appears, therefore, that this is a case of priorities between the defendants (appellees) and the plaintiff (appellant) in the salvaging of an insolvent corporation.

Two pertinent and determinative questions are presented. First: Did the trial court err in modifying the first decree entered of date February 9, 1925? Second: Are the bonds delivered to the appellant, as collateral, on a parity with the bonds sold and delivered for value to the appellees under the provisions of the trust agreement? The factual setting is as follows: The Gould Balance Valve Company was organized as an Iowa corporation in 1906, with its principal place of business in the town of Kellogg, Iowa, and was engaged principally in the manufacture of what is known as the Gould Balance Valve, designed to be used upon steam engines, to displace what is known as the "common D sliding valve," and obviate boiler pressure.

With the original capitalization and the early activities of the company this appeal is not concerned. The appellant, John

A. Gunn, was president of the company from 1911. The board of directors was composed of John A. Gunn, Charles A. Holmdahl, and E. R. Foster. In 1922, it was contemplated by the company that it should engage in an additional line of business, which expansion never materialized. However, on January 1, 1922, a trust deed or mortgage was executed and filed, to secure an issue of bonds in the sum of $40,000. The trust deed remained of record, but no bonds were immediately issued. The corporation did begin to sell bonds under the trust deed in October, 1923, and in this and the following year, the appellees respectively purchased bonds in the aggregate of $4,500, and during said time, the appellant purchased $1,000 worth of said bonds. No other bonds were sold, but there were issued by the company to Gunn, as presently noted, $7,500 worth of bonds of this issue, as collateral security to Gunn for loans made by certain banks to the company on notes given by the company, indorsed by Gunn as surety.

It appears that, in 1923, due to financial stringency, the Gould Balance Valve Company, in order to continue in operation, desired to borrow money from certain Des Moines banks, —to wit, the Central Trust Company, the Des Moines National, and the Iowa National; but the said banks would not accept the unsecured notes of the company, and thereupon the appellant, Gunn, together with Foster and Holmdahl, secretary-treasurer and vice president, respectively, of said corporation, signed said notes as sureties, whereupon the corporation received the loans. There was, at said time, an oral understanding and agreement that the bonds, as collateral, should be issued to Gunn.

It further appears that, on August 4, 1924, the board of directors of the Gould Balance Valve Company confirmed this agreement, and adopted a resolution whereby $7,500 worth of bonds, secured by the trust deed, should be issued and assigned to the said John A. Gunn, as collateral. The resolution in question recited the fact that certain notes in certain amounts had been executed by the company for valuable consideration to the banks aforesaid, and that:

"Whereas it was verbally agreed among the members of the board of directors of the said Gould Balance Valve Company of Kellogg, Iowa, and John A. Gunn, president of said company, Chas. Holmdahl, vice president, and E. R. Foster, secretary-

treasurer, that if the said Gunn, Holmdahl, and Foster would sign the notes referred to herein as surety thereon and personally obligate themselves for the payment thereof, that then and in that event the said Gould Balance Valve Company, by and through its board of directors and officers, would assign to John A. Gunn as collateral security certain first mortgage eight per cent (8%) gold bonds issued by the said Gould Balance Valve Company, dated January 1, 1922, in the sum of seven thousand five hundred dollars ($7,500), said bonds to be held by the said John A. Gunn as collateral security to indemnify the said Gunn, Foster ·and Holmdahl in the event that they should be called upon and required to pay any, all, or any portion of the notes referred to above, with the specific understanding, however, that the said John A. Gunn shall retain a sufficient amount of bonds in value to equal the amount the said Gunn, Foster, and Holmdahl, or any of them, shall be required to pay upon said notes as security, and the residue of said bonds shall be returned to the said Gould Balance Valve Company; and, whereas, the said Gunn, Foster and Holmdahl, in compliance with said verbal agreement and understanding, signed said notes as surety and in compliance therewith there was delivered to the said John A. Gunn on or about the 18th day of December, 1923,'' certain described bonds; ''and, whereas, no minutes or records were made of such transaction at the time the same was entered into and it being desirable that such matters should be made of record: it is therefore resolved: That this resolution be spread upon the records of said company and that all the acts, agreements and transactions pertaining thereto be and are hereby approved and affirmed and that said resolution shall take effect from the date of the negotiation of said notes referred to herein * * *.''

The appellant, Gunn, was the only financially responsible surety on said notes, and he was required to, and did, pay these notes. It is clear that the appellant Gunn knew, when he signed these notes as surety, that the corporation was not in a position at that time to meet its obligations *in toto*. He realized that the creditors of the corporation might ultimately look to him, and that the obligations he had signed might eventually have to be paid by him. He was, in fact, financing the corporation, that its doors might remain open.

Was the trial court legally justified in its finding and decree

that the appellant had no right or claim in and to the bonds in question, and was not entitled to a judgment thereon? .

True, in the first decree entered, the plaintiff Gunn secured judgments for certain moneys advanced to the company, and for two certain bonds which he had purchased from the company, which bonds were on a parity with those purchased by the appellees. This finding and judgment was not thereafter disturbed. It is also true that, in the first decree, the said judgments in favor of the appellant were decreed to be a lien upon the bonds ($7,500) held by the plaintiff John A. Gunn as security. This finding was modified in the second decree, after a full hearing of the cause, and after the defendants (appellees) were served with notice, and joined issue with the plaintiff Gunn. It is quite apparent that, up to the time of filing the first decree, there was nothing to impede Gunn in the course he had selected. The trial court, upon the first hearing, knew nothing of these appellees, or what their claims might be; but the decree did specifically provide that it was not binding upon the appellees, and the cause was continued for notice and for further hearing. This was proper procedure. Section 11091, Code of 1927.

When the trial court, upon the final hearing, entered its decree, it then could be said that a full and complete trial of the cause was had in a court that had jurisdiction of the subject-matter and of all the parties. The appellees had a right to be heard, and the first decree reserved to them that right; and at no time did appellant question that right or the method of procedure in the court below.

It is urged on this appeal that the issuance of the bonds in question to Gunn was without consideration, and that the manner of their issue was contrary to the provisions of the trust deed, and therefore the delivery was legally ineffectual. Neither the record nor the law sustains these contentions. The company would not have been able to obtain funds to carry on its business, had it not been for the fact that the appellant, Gunn, signed the notes of the company as surety; and when said notes became due, the company was unable to pay, and demand was made upon the appellant, Gunn, to pay, and he did pay all that was due upon said notes, from his own funds. Clearly, there was a valid consideration for the delivery of said bonds for the security of the claim. All funds that were obtained by the company, either

by sale or pledge of bonds, were used by the company for the same purpose,—to wit, to keep the company a going concern. Had the appellant, Gunn, purchased $7,500 worth of bonds, and paid for them in cash, the identical benefits would have resulted to the company.

A court of equity will closely scrutinize a transaction of this character, and will hold directors of a corporation strictly to fair dealing. As said in *Ramsey v. Welch Co.*, 163 Iowa 324:

"The bonds and the trust deed stand for the security of all creditors, without preference, the holders of the bonds having paid or permitted to be paid all other debts of the company. The bonds and the trust deed confer upon them no greater right or remedy than a court of equity would award to them upon the facts shown, if there were no bonds or trust deed."

See, also, *Warfield, Howell & Co. v. Marshall County Canning Co.*, 72 Iowa 666.

There was no fraud in the instant case, and we discover no bad faith in the obtaining of the bonds by Gunn as collateral security. The funds borrowed from the Des Moines banks upon the surety contract of Gunn were used by the company in its ordinary and usual business transactions. We discover nothing in the provisions of the trust deed which would defeat the bonds held by the appellant as security. The control of the corporation by its then management discloses no other purpose than to subserve the interests of the corporation, and there is no semblance of any hope of advantage to Gunn as a stockholder, director, and officer of the corporation. The trust deed in question was properly foreclosed, and, under the record facts, the first decree entered by the trial court should not have been disturbed in any particular.

It is conceded by the appellant that there should be deducted from the amount due Gunn a credit of the Gould Balance Valve Company on ensilage cutters in the sum of $1,000; and it is ordered that the trial court, in entering judgment and decree, shall recognize this concession.

The instant decree entered is—*Reversed.*

STEVENS, C. J., and EVANS, FAVILLE, ALBERT, MORLING, and KINDIG, JJ., concur.